**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

SHARON WILMER,

                     Plaintiff,

      v.                                                       No. 1:16-CV-905
                                                                     (NAM/CFH)

ALBANY COUNTY SOCIAL SERVICES,

                     Defendant.

---

**CHRISTIAN F. HUMMEL**
**U.S. Magistrate Judge**

**APPEARANCES:**                           **OF COUNSEL:**

Sharon Wilmer
Plaintiff pro se
Mercy House
12 St. Joseph Terrace
Albany, New York 12210

### REPORT-RECOMMENDATION AND ORDER

     Plaintiff pro se Sharon Wilmer commenced this action on July 22, 2016 with the filing of a complaint and a motion to proceed in forma pauperis ("IFP"). Dkt. Nos. 1, 2. Upon review of plaintiff's IFP application, the undersigned concludes that she may properly proceed IFP.[1] See Dkt. No. 2.

#### A. **Initial Review**

     Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court

---

[1] Plaintiff is advised that, although her IFP application has been granted, she will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action. As plaintiff is representing himself, the court is to consider his claims "liberally" and "interpret them 'to raise the strongest arguments that they suggest.'" Cold Stone Creamery, Inc. v. Gorman, 361 F. App'x 282, 286 (quoting Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006)).

### 1. Plaintiff's Claims

Plaintiff argues that defendant Albany County Department of Social Services (hereafter "DSS")[2] discriminated against her on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964. Dkt. No. 1 at 2. Although she does not explicitly argue as such, it is arguable that plaintiff is also attempting to contend that she was discriminated against due to her race. Id. at 3. Plaintiff provides that she brings this claim pursuant to "4 U.S.C. Section 1980s" and "42 U.S.C. 1998." Dkt. No. 1 at 4-5. Plaintiff contends that on July 17, 2016, she filed an application for emergency shelter through DSS. Id. Plaintiff contends that she completed all necessary steps in order to qualify for emergency shelter. Id. at 3. Liberally construed, plaintiff appears to contend that certain employees at DSS refused her emergency shelter, falsely contending that

---

[2] Plaintiff has named as defendant Albany County Social Services; however, the undersigned takes judicial notice that the proper name is Albany County Department of Social Services. However, at this time, the caption will reflect plaintiff's designation.

2

she did not comply with her prior living arrangement. Id. at 3. Plaintiff also appears to argue that certain DSS employees, throughout the application process, made humiliating comments toward plaintiff, insofar as they commented "that as an educated Black Woman that she should get a job and further humiliation why she should not return to Albany to be Homeless . . . ." Id.

It appears that, at some point, plaintiff filed a "Hastes Request for Emergency Housing and was placed by the After Hour Shelter Assisting Shelter Placement at Ramada Inn Hotel." Dkt. No. 1 at 3. Plaintiff returned to DSS on July 18, 2016, "as instructed by Hates Housing for Shelter." Id.[3] Plaintiff provides that, on her return to DSS, certain employees "continue[d] to make racial and gender discrimination about her daughter and further told SW she did not stay at the Ramada Inn Hotel and was Triple Team [sic] against Plaintiff by Several Social Worker [sic] as she comply [sic] proof that she did in deed [sic] stay at the Ramada Inn by providing her key to room 705." Id. at 3. Plaintiff next argues that the social workers "plotted together a scheme saying Plaintiff was on the do not admit list shelter and was referred to unsafe housing at Schenectady County Booth home in which was pts. [sic] Danger for safety and wellbeing [sic]." Id. Plaintiff provides that she filed a "fair hearing complaint" on July 19, and was placed at the Mercy House. Dkt. No. 1 at 3. Plaintiff believes that the Mercy House placement contradicts the DSS workers' claims that she was on a do not admit shelter list. Id.

---

[3] In referencing "Hates" and "Hastes," it is possible that plaintiff intends to refer to HATAS - The Homeless and Travelers Aid Society, which provides, among other things, emergency housing assistance. See http://.hatas.org/About.php (last visited July 25, 2016).

3

Plaintiff contends that defendant DSS "has engaged in a patter of gender discrimination and other violation of Plaintiff Sharon Wilmer Human Right to Safe Housing" despite the fact that she "provide[d] evidence and compliance with her request for safe housing." Dkt. No. 1 at 4. She contends that she was "grossly harassed and denied housing." Id. She further argues that, as a result of DSS's conduct, she has suffered from emotional distress, chest pains, stress, depression, racing heart, and high blood pressure, and demands compensatory and punitive damages. Id. at 4-5.

### 2. Analysis

Plaintiff appears to argue that she was discriminated against on the basis of her gender and race insofar as she was initially denied[4] emergency housing by defendant DSS. See generally Dkt. No. 1. As evidence of apparent racial and gender discrimination, it appears that plaintiff is alleging that defendants fabricated a claim that plaintiff did not comply with her prior housing placement at the Ramanda Inn Hotel, despite the fact that plaintiff offered evidence of compliance. Id. Further, plaintiff indicates that DSS employees made comments that plaintiff is an "educated Black woman" who should find a job and should not return to Albany to be homeless. Id.

Plaintiff purports to bring this claim pursuant to "42 U.S.C. § 20000et Seq. (Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1993." Dkt. No. 1 at 2. It appears that plaintiff may be intending to refer to 42 U.S.C. § 20003 et.

---

[4] Although difficult to discern, it appears plaintiff eventually received emergency housing through DSS. See Dkt. No. 1 at 4.

seq. It is well settled that Title VII is a statue pursuant to which individuals sue to recovery from discrimination in employment. See 42 U.S.C. § 20003-2 ("It shall be an unlawful employment practice for an *employer* – (1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, or national origin.") (emphasis added).[5] As plaintiff was not an employee of defendant, and her claims do not arise out of workplace discrimination, she cannot bring a claim against DSS pursuant to Title VII.

Giving plaintiff due solicitude, she may wish to pursue a claim against DSS for discrimination in public services, which would be pursuant to Title VI, 42 U.S.C. § 2000d. Title VI of the Civil Rights Act of 1964 provides that no person may, "on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Plaintiff, however, has not stated facts from which one can infer any discriminatory intent or motivation with respect to

---

[5] Plaintiff further contends that this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343. Dkt. No. 1. at 2. Section 1331 provides for federal question jurisdiction and section 1343 provides that district courts have original jurisdiction over actions alleging civil rights violations. As plaintiff sets forth a claim of violation of rights purportedly secured by a federal statute, plaintiff has established federal question jurisdiction. See City of Kenosha, Wisconsin v. Bruno, 412 U.S. 507, 512 (1973) (providing that a federal court is obligated to notice on its own motion to basis for its jurisdiction).

race on the part of defendant.  See Yusuf v. Vassar Coll., 35 F.3d 709, 712-14 (2d Cir.1994) ("A plaintiff alleging racial or gender discrimination by a university must do more than recite conclusory assertions.").  Although plaintiff makes general comments that defendant, through its employees, discriminated against her because of her race and gender, the only specific comment plaintiff states in support her claim that she was discriminated against on the basis of race is that a DSS employee told her that she was an "educated Black Woman" who should find a job and not be homeless.  Dkt. No. 1 at 3.  However, this statement, even when construed as liberally as possible, does not suggest discrimination on the basis of race.  See Roggenbach v. Touro College of Osteopathic Medicine., 7 F. Supp. 3d 338, 347 (S.D.N.Y. 2014) ("A single comment – even if offensive – is not sufficient to uphold a Title VI claim on its own.") (citation omitted).  Plaintiff also states, without providing details to support this claim, that defendant DSS employees "continue to make racial and gender discrimination about her daughter" when plaintiff returned to DSS on July 18, 2016.  Id.  However, plaintiff's daughter is not a named plaintiff herein, and, further, plaintiff offers no evidence detailing the alleged racial discrimination against her.  Even assuming, as we must, that it is true that plaintiff was denied emergency housing, despite being eligible and not on a "do not place" list, plaintiff still does not plead sufficient facts to demonstrate that the initial denial of emergency housing was based on intentional discrimination due to her race in order to plead, even at this early stage, a sufficient violation under Title VI.

    Insofar as plaintiff contends that she was discriminated against on the basis of her gender, Title VI does not protect against gender discrimination.  However, as

6

plaintiff is entitled to special solicitude, the Court will assess whether plaintiff may be able to set forth a claim under Title VIII of the Civil Rights Act of 1968, the Fair Housing Act, as amended by the Fair Housing Amendments Act of 1988.  42 U.S.C. § 3601, et seq.  The FHA prohibits discrimination in the sale, rental, and financing of dwellings due to race, color, religion, sex, or national origin. 42 U.S.C. § 3604(a) ("[I]t shall be unlawful . . . to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.").  First, it is unclear if emergency shelter would be a "dwelling" under the FHA or if plaintiff would be considered a "renter" within the FHA's terms.  However, even if plaintiff is able to demonstrate that she falls within these definitions such that she can properly bring her claim for gender discrimination under the FHA, plaintiff has presented no evidence that DSS "ma[d]e unavailable or den[ied] a dwelling" to plaintiff due to plaintiff's gender or race.   42 U.S.C. § 3604(a).  As indicated above, the only example plaintiff provided of DSS employees even mentioning her race or gender was an employee's comment that she was an educated Black Woman" who should find a job and not be homeless. Dkt. No. 1 at 3.  Plaintiff makes conclusory allegations that defendant employees "grossly harass[ed]" her, defendants "continue[d] to make racial and gender discrimination about her daughter," and "engaged in a pattern of gender discrimination and other violation [sic]."  Dkt. No. 1 at 3-5.  However, plaintiff sets forth no evidence that DSS's denial of emergency housing was motivated or caused by discriminatory animus as to plaintiff's race or gender.  See, e.g., Mitchell v. Shane, 350 F.3d 39, 49 ("The plaintiff bears the ultimate burden of proving, by a preponderance of

7

the evidence, that the defendants' challenged actions were motivated by discrimination . . . .").

As bald allegations of discrimination on the basis of race or gender, without specific evidence to support that the initial denial of emergency housing was motivated by, or caused by, plaintiff's race or gender, plaintiff's Title VI and arguable Fair Housing Act claims must be dismissed. Plaintiff pleads nothing that would "give plausible support to [eve] a minimal inference of discriminatory motivation." Littlejohn v. City of N.Y., 995 F.3d 297, 311 (2d Cir. 2015). However, as plaintiff is proceeding pro se, it is recommended that the dismissal be without prejudice and that plaintiff be afforded an opportunity to amend her complaint.[6]

As a final note, plaintiff demands punitive damages. It is well-settled that Title VI only permits recovery of compensatory damages, not for punitive damages. Barnes v. Gorman, 536 U.S. 181, 187-88 (2002). Accordingly, it is recommended that plaintiff's claim for punitive damages – insofar as it can be read that she is seeking such damages in connection with a Title VI claim – be dismissed with prejudice.[7]

---

[6] Plaintiff has unsuccessfully brought similar actions in the past. In 2013, plaintiff, along with her daughter, brought an action against DSS in 2013 setting forth, among other things, Title VI claims relating in part to housing. See Robinson v. Social Service, 13-CV-172 (NAM/CFH), 2013 WL 1122450 (N.D.N.Y. Feb. 22, 2013). That case was dismissed with prejudice after plaintiff failed to amend her complaint, pursuant to the Court's decision and order See Robinson v. Social Service, 13-CV-172 (NAM/CFH), 2013 WL 1122450 (N.D.N.Y. Feb. 22, 2013), Dkt, Nos. 5, 7. Plaintiff also brought an action alleging discrimination against Cedar Park Apartments which also appeared to be based, in part, on housing difficulties and discrimination. Wilmer v. Cedar Park Apartments, 1:13-CV-167 (TJM/RFT), Dkt. Nos. 5, 8, 10. That case was dismissed with prejudice after the Court determined that it did not have subject matter jurisdiction and plaintiff failed to amend her complaint to demonstrate otherwise. See id.

[7] Insofar as plaintiff's complaint may be read as setting forth a claim for gender and race discrimination in violation of the Fair Housing Act, a claim for punitive damages under such statute need not be dismissed, as the FHA expressly allows for recovery of punitive damages. United States v. Space

8

## III. Conclusion

For the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's application to proceed IFP (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's complaint be **DISMISSED** in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted; and it is further

**RECOMMENDED**, that plaintiff's claim for punitive damages, insofar as she requests such damages in connection with a Title VI, be **dismissed with prejudice**; and it is further

**RECOMMENDED**, that, in light of plaintiff's pro se status, the remainder of plaintiff's complaint be **dismissed without prejudice**, to afford plaintiff an opportunity to amend her complaint[8] to set forth violations of Title VI and the Fair Housing Act and provide sufficient details as to how she was intentionally discriminated against due to her gender and race in violation of such statutes; and it is further

---

Hunters, Inc., 429 F.3d 416, 427 (2d Cir. 2005). Accordingly, the recommendation to dismiss plaintiff's claim for punitive damages is limited to her Title VI claim.

[8] Should the District Judge adopt this Report-Recommendation and order granting plaintiff an opportunity to amend her complaint, the following guidance is offered. Any amended complaint that may be filed will supersede and replace completely the first complaint filed by plaintiff. The amended complaint must contain a caption that clearly identifies the party being sued and mut contain the case number assigned to this action. Plaintiff must clearly state the nature of the suit, the basis for this jurisdiction, and specific details as to how defendants' alleged behavior amounted to discrimination on the basis of plaintiff's gender or race. Further, in compliance with the Federal Rules, the body of any amended complaint must contain sequentially numbered paragraphs which each discuss only one act of misconduct per paragraph.

**RECOMMENDED**, that plaintiff be provided **thirty (30) days** from the date of the filing of the Decision and Order adopting this Report-Recommendation and Order to file an amended complaint; and it is further

**RECOMMENDED**, that, if plaintiff fails to file an amended complaint within **thirty (30) days** from the date of the filing of the Decision and Order adopting this Report-Recommendation and Order, the Clerk of the Court shall enter judgment dismissing this action without further order of the Court; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on plaintiff in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**IT IS SO ORDERED.**

Dated: July 25, 2016
Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge